# UNITED STATES DISTRICT COURT

**FILED**

EASTERN DISTRICT OF CALIFORNIA

NOV 7 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

STEPHEN J. ISOCZKY,

2: 1 2 - MJ . - 2 9 9   CKD

## CRIMINAL COMPLAINT

Case No.

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about the dates set forth below in the Eastern District of California, defendant ISOCZKY, did (Track Statutory Language of Offense)

- on 9/2/12 and 11/1/12, use an instrument of interstate commerce to maliciously convey false information to kill, injure, or intimidate by means of an explosive device (Counts 1 and 2); and

- on 11/2/12, did knowingly make false statements to agents of the United States which were material to a matter in which the agents were investigating (Count 3)

All in violation of Title 18, United States Code, Sections 844(e) (use of an instrument of interstate commerce to convey a threat or false information) and 1001 (False statements to a US agency). I further state that I am a Postal Inspector of the United States Postal Inspection Service in and for the Eastern District of California and that this complaint is based on the following facts:

- see attached Affidavit, fully incorporated herein

Signature of Complainant   MICHAEL CHAVEZ

U.S. Postal Inspector

Sworn to before me, and subscribed in my presence

11/7/12

~~GREGORY G. HOLLOWS~~ , U.S. Magistrate Judge

**Carolyn K. Delaney**
**U.S. Magistrate Judge**

at   Sacramento, California

Date

AFFIDAVIT

I, Michael Chavez, being duly sworn, depose and state the following.

1.       I am a Postal Inspector and have been so employed since June of 2006. Currently I am assigned to the External Crimes team of the San Francisco Division, Sacramento Domicile of the United States Postal Inspection Service (USPIS). During my tenure I have completed Basic Inspector Training at the United States Postal Inspection Service Academy in Potomac, MD.

2.       As a part of my official duties, I am authorized to investigate and to make arrests for violations of federal and state law, including robbery and burglary of postal facilities, destruction of government property, theft of U.S. Mail, possession of stolen U.S. Mail, mail and bank fraud, obstruction of mail, credit card fraud, identity theft and/or counterfeit personal checks and identifications, false statements, and mailing threatening communications.

3.       As an Inspector with the USPIS, I have participated in numerous criminal investigations relating to burglary of postal facilities, theft of U.S. Mail, destruction of government property, counterfeit corporate checks, possession of stolen U.S. Mail, counterfeit personal checks, bank fraud, identity theft, narcotics, and counterfeit identifications. I have also conducted investigations regarding the manufacturing and utterance of counterfeit corporate checks, counterfeit personal checks, and mailing threatening communications.

4.       The facts and conclusions in this affidavit are based (a) on my personal knowledge, (b) on my participation in this investigation, (c) on my training and experience, and the training and experience of other law enforcement personnel with whom I have discussed this case, (d) on information gained from other law enforcement personnel, state and federal reports, law enforcement databases, and (e) statements of witnesses, victims, and postal personnel.

5.       Because this affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant, I have set forth only the facts that I believe are necessary to establish that there is probable cause to believe that STEPHEN J. ISOCZKY (D.O.B 03/10/1952) committed numerous violations of federal law, and aided and abetted such, including:

-       two violations of 18 USC 844(e) (use of instrument affecting interstate commerce to convey threat or false information to kill, injure, or intimidate by means of explosive devices (Counts 1 and 2));

-       a single violation of 18 USC 1001 (knowingly making a material false statement to an agent of the United States (Count 3)).

6.       On 9/2/12, at approximately 1:58PM PST, a male (later identified as Isoczky) contacted the national telephone network of the United States Postal Inspection Service, which is located outside the state of California, via its telephone number (877) 876-2455. Isoczky claimed to be "Byron Anderson." Based on caller ID, and later confirmed with the telephone service provider, the call was received from the telephone number (209) 577-9606. The caller (Isoczky) provided the name Phyllis F. and a Rocklin, CA address and alleged that Phyllis F. was involved in the sale of child pornography over an extended period of time. Further, Isoczky claimed his family member purchased child pornography from Phyllis F. Isoczky conveyed

information that two "letter bombs" were sent to Phyllis F. at her Rocklin, CA address in retribution and intimidation of Phyllis F. for selling child pornography to "the wrong person." Isoczky claimed he knew the individual who mailed the letter bombs. Isoczky referenced the type of explosive device ("astrolite") which was contained in the letter bombs to Phyllis F's address in Rocklin, CA. Isoczky, during his call and while pretending to be "Byron Anderson", declined to provide further details or contact information.

7.      Isoczky, in making his letter bomb threat on 9/2/12, intended that his threat be taken seriously. First, he specifically referred to a known explosive substance. In fact, "astrolite" is a highly explosive chemical mixture. Second, Isoczky, while falsely claiming to be a citizen informant, intended that law enforcement respond to the targeted residence (Phyllis F.). Third, Isoczky provided information that included a specific time frame, motive, and location for the letter bomb(s). Additionally, Isoczky conveyed the false information directly to the United States Postal Inspection Service a national first responder agency. This agency has responsibility for ensuring the safety of postal workers and the safe handling and delivery of items through the U.S. Mail. Law enforcement within the Inspection Service thereafter spent over 200 extra-work hours, 24/7, monitoring (including x-ray and manual screening) all US Mail going to the target zip code and the specific address. To date, no suspicious letters or parcels were received at the address specified by Isoczky.

8.      Law enforcement spoke with Phyllis F. (now Phyllis G. and hereafter referred to as Phyllis G), and her husband Norman G. Phyllis G. confirmed that the Rocklin, CA address referenced by the letter bomb caller (Isoczky) was her previous residence. Phyllis G. advised that she still owned the targeted residence and that it was currently occupied by renters. Phyllis G. and Norman G. did not know anyone named "Byron Anderson." Phyllis G. and her sister, Kathy M., separately confirmed that Isoczky was a person known to them as "Stevie" and that he (Isoczky) previously dated their sister (Patricia F.). Each separately confirmed that, at the conclusion of Isoczky and Patricia F.'s relationship, Isoczky remained close to their mother (Edith F. (deceased)) and eventually resided with Edith F. in her Rocklin, CA residence acting as her companion and caretaker for several months in 2001. Phyllis G. confirmed that during this time she managed her mother's finances and became aware that "Stevie" (Isoczky) was not paying rent and he was verbally abusive to Edith F. Phyllis G. eventually ordered Isoczky to vacate the Rocklin, CA residence. Phyllis G. confirmed that it was a very contentious situation and she recalled "Stevie" (Isoczky) was extremely angry at her and recalled him shouting at her. Phyllis G. confirmed Isoczky looked familiar to her after viewing a Placer County, CA booking photograph dated 10/9/01. After separately viewing the same Placer County, CA booking photograph dated 10/9/01 of Isoczky, Kathy M. confirmed that the person depicted in the photograph was "Stevie" (Isoczky). Law enforcement confirmed that according to ACCURINT, a law enforcement data base, Isoczky was in fact previously associated with Edith F.'s Rocklin, CA address for approximately five months in 2001. Further law enforcement confirmed that this address was the residence of Edith F.

9.      Isoczky's 9/2/12 call conveying the letter bomb threat was made from a public pay telephone located at the Greyhound bus station in Modesto, CA. Law enforcement obtained surveillance video and images from the area in close proximity to this specific telephone which correspond with the time and date of the letter bomb threat call. In the video, Isoczky is depicted, namely, a white male wearing a Hawaiian style short sleeve shirt with thin framed sunglasses. The white male (Isoczky) appeared to be aged approx. 55-65, with thinning hair, and he is carrying a black computer bag.

10.     On 11/1/12, at approximately 12:31PM PST, Isoczky again contacted the national telephone network of the United States Postal Inspection Service, which is located outside the state of California, via its telephone number (877) 876-2455. Based on a zip code input by Isoczky, the call was routed from servers outside the state of California to a USPIS agent in Richmond, CA. Based on caller ID, and later confirmed with the telephone service provider, the call was received from the telephone number (209) 836-9852. Isoczky provided the name Frank C. and an Auburn, CA address. Isoczky stated that a letter bomb had been sent to Frank C. at the Auburn, CA address. Isoczky claimed to know the person responsible for sending the letter bomb but refused to provide the information to law enforcement. Isoczky, while remaining anonymous and conveying the letter bomb threat, claimed Frank C. operates the Bail House (bail bonds). Isoczky indicated the letter bomb was sent for retribution and intimidation, as a "revenge bombing". Isoczky, in conveying the letter bomb threat, claimed the bombing was in revenge for Frank C.'s referrals to a fake attorney named Ronald S.

11.     Isoczky, in making his letter bomb threat on 11/1/12, intended that his threat be taken seriously. First, Isoczky, while falsely claiming to be a citizen informant, intended that law enforcement respond to the target (Frank C.) and the targeted business (the Bail House). Second, Isoczky provided information that included a specific time frame, motive, and location for the letter bomb(s). Additionally, Isoczky conveyed the false information directly to the United States Postal Inspection Service a national first responder agency. This agency has responsibility for ensuring the safety of postal workers and the safe handling and delivery of items through the U.S. Mail. Law enforcement within the Inspection Service thereafter took emergency steps to alert the target, its business employees, and postal employees processing and handling mail in the relevant zip code. USPIS agents dispatched and contacted other first response personnel within and outside its agency. Additionally, law enforcement spent extra time monitoring (including x-ray and manual screening) US Mail going to the target address. To date, no suspicious letters or parcels were received at the address specified by Isoczky.

12.     Law enforcement spoke with Frank C. and confirmed he is a licensed bail bondsman operating in Auburn, CA at the targeted address. Frank C. advised law enforcement that earlier, on about 9/14/12, he received a letter (postmarked Modesto, CA) addressed to him from a person claiming to be "Byron Anderson." The letter writer claimed that Frank C. "set up" the letter writer's family member. The letter writer intimidated Frank C. by threatening that Frank C. would be receiving a "professional visit". The letter writer claimed Frank C. was responsible for referring the letter writer's family member to a fake attorney named Ronald S. The letter writer claimed his family suffered at least a $40,000 financial loss.

13.     Law enforcement confirmed the 11/1/12 letter bomb threat call was made from a pay telephone located in Tracy, CA. Law enforcement obtained surveillance images of the area around the pay telephone at the time the letter bomb threat call was made. The male caller (Isoczky) is depicted wearing a light colored top and dark pants. The male caller is depicted coming from and returning to a direction in which law enforcement later located a motel in which Isoczky was staying. Based on subsequent law enforcement record checks, law enforcement determined that Isoczky was wanted on 2 outstanding warrants: a California state parolee at large warrant and a federal petition for violation of supervised release (absconding and failure to participate in out-patient substance abuse treatment). In addition, law enforcement determined that in 11/05, Isoczky suffered a federal felony conviction for uttering counterfeit US currency (18 USC 472). Further, it was determined that Isoczky began serving his term of

Affidavit                                                                                                                    3

supervised release on 6/23/08 but since 7/7/08 he has failed to contact his assigned probation officer and his whereabouts have been unknown.

14.    On 11/1/12, by surveillance law enforcement confirmed that Isoczky is a white male, aged approx. 60, with thinning hair and law enforcement confirmed that he is the person depicted in the surveillance video from the 9/2/12 letter bomb call. At approximately 9:00 PM PST on 11/1/12, law enforcement contacted Isoczky in his motel room and confirmed his identification. In plain view, from the motel room doorway law enforcement observed a black computer bag and thin framed sunglasses similar to those depicted in the 11/1/12 surveillance video. After Miranda advisement and waiver, Isoczky claimed he was a transient with only the possessions in his room and stated he primarily stays in motels or at shelters. Further he claimed he did not have a permanent address, rather he travelled primarily on Greyhound to various cities such as Tracy, CA and most recently Modesto, CA. Isoczky confirmed that no other persons were sharing the motel room with him and that all the items inside of the room belonged to him. When shown a photo from the previously described surveillance video from the Greyhound Bus station in Modesto, CA dated 9/2/12, Isoczky admitted to being the person depicted in the photograph.

15.    During the 11/1/12 post Miranda interview with Isoczky, law enforcement observed in plain view, on top of a table inside of the motel room, a black laptop computer (open and on), two cellular telephones, and an open spiral notebook displaying handwritten notes. On the displayed page, the national telephone network telephone number "(877) 876-2455" of the United States Postal Inspection Service was written along with the word "target". In addition, the displayed page had the true full name of bail bondsman Frank C. and the true name and address for his Auburn, CA Bail House (bail bonds) business. As stated above, the 9/14/12 intimidating letter and 11/1/12 letter bomb threat call were directed at Frank C. and the Bail House (bail bonds) business.

16.    During the 11/1/12 post Miranda interview, when questioned about the targeted victims identified in both letter bomb threats (9/2/12 and 11/1/12), Isoczky repeated multiple times, "There are no bombs." During the interview, Isoczky lied to law enforcement, including by claiming he did not know or ever hear of Phyllis F, (Phyllis G), or any of her family. Iscozky lied in claiming that at no time did he reside in Sacramento, Rocklin, or Auburn, CA. Isoczky further provided law enforcement false information about not knowing and never hearing of Frank C. Iscozky lied about ever hearing of The Bail House in Auburn, CA and claimed he had never heard of the United States Postal Inspection Service. Isoczky repeatedly denied knowing or ever having heard of the Bail House or Frank C. and offered no explanation for having the Bail House and Frank C's information on the spiral notebook in his possession

17.    Your affiant has listened to the audio recording of the 9/2/12 letter bomb threat call. Based on my training and experience, the training and experience of the law enforcement personnel who also listened to the 9/2/12 letter bomb call and who accompanied me on 11/1/12, and based on common sense, I am aware that Isoczky's voice, heard during the 11/1/12 post Miranda interview, matched that of the 9/2/12 letter bomb caller. On 11/6/12, a federal search warrant was executed on the items and property Isoczky consensually provided to law enforcement (on 11/1/12). After preliminary review of Isoczky's notebook and other documents, law enforcement observed Isoczky's handwritten notes referencing Ronald S., the individual specified as the motivation for the 9/14/12 threatening letter and the 11/1/12 letter bomb threat call.

Affidavit                                                                                                     4

18.     Based on the above information, there is probable cause to believe that STEPHEN J. ISOCZKY (D.O.B 03/10/1952)  violated 18 USC 844(e).  Specifically, on 9/2/12 (Count 1), Isoczky through the use of a pay phone and a national telephone network, instruments of interstate commerce, maliciously conveyed false information, knowing the information to be false, concerning letter bombs targeting victim Phyllis F. being made and sent to kill, injure, and intimidate Phyllis F. and or her property, by means of an explosive.  Also, on 11/1/12 (Count 2), Isoczky through the use of a pay phone and a national telephone network, instruments of interstate commerce, maliciously conveyed false information, knowing the information to be false, concerning letter bombs targeting victim Frank C. and his business (the Bail House) being made and sent to kill, injure, and intimidate Frank C. and or his property, by means of an explosive.  Further, on 11/1/12, during an investigation within the jurisdiction of the U.S. Postal Inspection Service, a department or agency of the United States, Isoczky knowingly and willfully made materially false, fictitious, and fraudulent statements.  Specifically, Isoczky falsely stated to agents of the United States investigating false or hoax letter bomb threats made via instruments of interstate commerce directed at victim Phyllis F., Frank C., and the Bail House that: (1) he did not know and had no prior association with victim Phyllis F. or any of her family members, (2) he at no time in the past lived or resided in Rocklin, California, and (3) he did not know and had no prior association with victim Frank C. or the Bail House.  Isoczky made such statements while knowing that, in truth and in fact, he had previously associated with Phyllis F., by and through being a caretaker and companion with her mother, Edith F., and by and through having a romantic relationship with her sister, Patricia F., that, in truth and in fact,  he previously resided with Phyllis F.'s mother in Rocklin, California, and that, in truth and in fact, he had victim Frank C.'s true name and the true address of the Bail House written in his notebook he possessed at the time he made the statements.  Accordingly, your affiant respectfully requests that the attached complaint and arrest warrant be issued.

19.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief, and that this affidavit was executed in Sacramento, California on _November 7_ 2012

Michael Chavez
Inspector, US Postal Inspection Service

Sworn and subscribed before me
this _7th_ day of November, 2012

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

**Carolyn K. Delaney**
**U.S. Magistrate Judge**

Approved
Michelle Rodriguez
Assistant United States Attorney